Good morning. May it please the Court, my name is Linda Ziskin. I'm of attorneys for the appellant Merriweather Franklin. I would like to reserve, if possible, two minutes for rebuttal. I'll keep the clock as much as possible. Thank you. I'd like to clarify first that the argument today is solely regarding mental issues. And that was in the briefing as well. I'd like to jump right into the dispositive issue here. And that is that the administrative law judge got it wrong when he completely threw out the opinion of the consultative psychologist in this case. That's Dr. Zipperly. He also erred in the way he rejected the opinion of the treating psychologist, or psychiatrist, rather, Dr. Siever. So let's talk about Dr. Zipperly first briefly. First of all, I'd like the second reason to start with. The ALJ said that the opinion was inconsistent with the record. What record is he talking about? Is he talking about the record where there's nothing in there but the opinion of Dr. Zipperly, the opinion of Dr. Siever, the testimony of the appellant's mother, and the appellant's own statements and testimony? That's the record. So let's assume you're right. Let's assume that under our case law, the ALJ did not give sufficient reasons for rejecting that doctor's opinion. Right. There was stuff in the record from which he could have rejected or she could have rejected the doctor's opinion. They were conflicting. There were conflicting opinions in the record. So what do we do under those circumstances? Your Honor, there were actually no conflicting opinions. The outliers are the State Agency DDS non-examining reviewers. Well, but they are, even though they're non-examining reviewers, they're not substantial evidence according to Lester and Gallant. Well, but it's your burden to demonstrate the disability, right? Correct. Now, the — I can't look at this record and say that the doctor, that the ALJ was absolutely compelled to accept the reports from your — He is compelled to give clear and convincing reasons. For turning them down. And he failed to do so. Correct. So my question is, under those circumstances, don't we — and you were probably here earlier today. Yes. The credit is true rule. Yeah, I know. So what do we do under those circumstances? Let me not lead you. I am asking the Court to credit as true both the opinions of Dr. Zipperly, if I'm pronouncing that right, and Dr. Siever, and for the reasons that I'd like to share with you. It's not legally adequate to simply assert that this opinion is inconsistent with the record, referring globally and vaguely to a record that really doesn't contain any conflicting medical evidence and is not inconsistent with the opinion of that doctor. Isn't the underlying decision by the ALJ that Franklin wasn't credible and then rejecting the doctors on the basis that they — their analysis was based on her subjective complaints? That's correct. And in my view, that's circular reasoning. But what if he'd said that? What if the ALJ had said that? Well, he did say that. I mean, we said I reject the reports of the doctors. That was the second reason. Right. Because the doctor's opinion was based large — primarily, if not solely, upon her subjective complaints. Is that sufficient under our case law? It is if what the ALJ is saying is true. But it's not, because — But did the ALJ err in its credibility determination? If so, why? Because credibility has nothing to do with the doctor's opinions. So we don't need to reach credibility. The ALJ gives a range of reasons why Franklin was not credible, like four or five reasons. So was that sufficient to show that the claimant was not credible? Well, it depends on the reasons. I mean, the reasons that he gave, and if you look at the U.S. District Court decision and the appellant's or the appellee's brief, the little minor inconsistencies that were latched upon don't really have a bearing on credibility. For example, the government asserts that she stated that she didn't know how to drive, couldn't drive, and then she said later that she could drive. Or she said that she didn't know who the President was. Well, if you look at Dr. Zipperly's mental status examination, she clearly did say that she can drive but doesn't. Not that she can't drive. There's no inconsistency there. And it's just flatly wrong. She said, I know who the President is, I know when my birthday is. So those are factual errors that the district court accepted. And I must ask this Court not to affirm that district court opinion, which is based on misrepresentations by the government as to what she really said. Is there a difference between Dr. Zipperly's and Dr. Zipperly's? I'm sorry, go ahead, Judge Kagan. I was just going to say, going back to Zipperly for a minute, it seems that one of the threads that runs through the ALJ's opinion is this concern that your client was fabricating or exaggerating symptoms to get benefits. And they cite to the fact that there was a reference in the hospitalization records that they questioned that. And there was another reference to the fact that she had been denied benefits, so I guess I'll have to go back to work. And a couple others. Is that grounds to say I'm really taking, I'm looking at her subjective complaints to Zipperly with a little more skeptical eye because I see these other references that she maybe have hospitalized herself because of the application? That's a great question because, first of all, those underlying statements that you're finding not credible need to be true. So she didn't say at the hospital that she, or to one of the doctors, that she wanted to record, she wanted a recording of the examination. She said, I need my records. If you look at the, there's just a lot of just false statements here, mischaracterizations. In the hospital, that's very interesting. I've never seen an ER doctor actually question why a mentally ill person who has been brought to the ER by her mother because she's been cutting on herself with razor blades, why would he wonder why she was there? And she was there on a 5150, which is California Welfare and Institutions Code, for a 72-hour hold. But whether those doctors were right or not, isn't that sort of irrelevant? I mean, they made those statements in the record, and the ALJ relied on them. I think they're irrelevant, but the government's relying on that. Well, the ALJ relied on them. Yeah. So the ALJ said, we have doctors who saw her who raised a question about whether her reason for seeking medical treatment is to enhance her ability to get disability. And so the ALJ took that into account, and there was evidence in the record supporting that. Right. So I appeal to your common sense here. It doesn't make sense. Now you're in trouble. I know. Now I'm on dangerous ground. But it's really need to wait. Right. So we can't rethink what the ALJ was doing. We're just looking at what the ALJ's analysis was based on. I need you to look at the context, too, Judge Acuda, because an emergency room doctor who makes a statement like that, it makes no sense. But it's in the record. We're not the triers of fact. The 5150 form is in the record, too, Your Honor. Let me ask you a separate question, and it relates to Dr. Seaver, I think. Right. The ALJ gives some weight to Dr. Seaver's report. Right. But rejects some other parts of it. Right. Are you contending that the ALJ erred in doing that? Yes, because we don't know how much weight some weight is, and we don't know which parts he rejected. Well, do you think our cases require him to say, I give it 40 percent weight, 30? I mean, I don't understand what you're saying. He can say some weight and then explain what parts he rejects and what he has to do that. But doesn't he say the residual function capacity was not his, that he came up with is not entirely inconsistent with Dr. Seaver's opinions? So he says, I tried to come up with something that wasn't inconsistent with Dr. Seaver's opinions. He never says what parts are consistent, what parts are inconsistent. And the ALJ has to give us his rationale, because otherwise there's nothing for a reviewing court to review. When I look at Dr. Seaver's reports and the limitations that Dr. Seaver finds, they're pretty consistent with the limitations the ALJ finds, aren't they? Not really. They're more consistent with the limitations that Dr. Zipperly finds. And the big one that I want to call to your attention is the stress intolerance, because, again, the district court got it wrong because they accepted the false statement that was advanced by the government that the ALJ did consider stress intolerance. No, he didn't. He did not. He does not mention it. He did not consider it. The stress intolerance alone, which is a simple repetitive work with no public interaction. Right. And so he didn't specifically say stress, but that seems to at least arguably go to that issue. Well, arguably, and I would argue that it does not, because stress is a subjective thing that each worker experiences. And if you're on Lucy and Ethel's line of chocolates going by at a high rate of speed, that's very stressful, even though it's simple, repetitive work. So Franklin's attorney, were you the attorney below, or? No, no. So Franklin's attorney has a hypo, which also, which seemed not clearly supported by the record. So for one of the limitations is a reduction in output or in percentage of the day by 20 to 30 percent. Is there support in the record for that? I believe so. That's just a way that the administrative level attorney quantified some of the limitations that were advanced by Dr. Zipperly and Siever. But that was pulled, the 20 to 30 percent was just pulled out of the air? Or was there something specific? No. It's a reasonable way to quantify when a doctor says that this patient will have a difficult time maintaining regular work attendance and it would be not possible for her as the psychiatric condition would interrupt her workday. So the administrative level attorney is trying to put that into quantifiable terms for the V.E. You can't tell a V.E. she's going to miss some part of the workday, we're not sure how much. A V.E. can't handle that. A V.E. needs a hypo with numbers. So the attorney doesn't know that 30 percent of the day would be or the output would be reduced by 30 percent.  It's a reasonable. It's just a speculation or a guess. I would not say it's a speculation. I would say that he chose 30 percent because 30 percent in Social Security law up to about 30 percent is one-third of the workday and that is occasional. That's defined as occasional. Did you want to save some time for rebuttal? I certainly do. Thank you, Your Honor. We'll hear from the government. Good morning. May it please the Court, Daniel Talbert for the Acting Commissioner of Social Security. The only evidence in this record that supports the appellant's claim of disability and, in fact, that supports greater functional limitations than the ALJ found depends on the credibility of Franklin's allegations. Substantial evidence supports the ALJ's finding that the claimant's testimony was not credible. Could I just ask whether the ALJ, regardless of whether the reasons the ALJ gave to say that Franklin wasn't credible, whether the ALJ erred in not following our guidance in Brown-Hunter and earlier cases as well, that the ALJ must specify which testimony she finds not credible and then provide clear and convincing reasons supported by evidence in the record to support that credibility determination. So the ALJ said generally didn't find Franklin credible but did not point to any specific testimony. At least I didn't see that. So wasn't that a legal error under our case law? No, Your Honor. There's not an error in this case because, first of all, the ALJ's credibility finding, I mean, the ALJ is talking about sort of credibility broadly in the decision, but the ALJ, after saying the claimant's testimony is not credible, goes into a bit of a discussion of what the claimant's testimony was. There is a paragraph where the ALJ discusses what the claimant's testimony was, what her mother's testimony was. But doesn't say any of that is not credible. So are you saying that so there's the boilerplate paragraph about it's not credible to the extent they are inconsistent with the above residual function capacity assessment. We said in Trichler that that's insufficient for adverse credibility determination. And all that follows below that is supporting the adverse credibility determination. The information above that is just a factual recitation of what's in the record. So how is that not a failure to comply with the requirement in Brown-Hunter? Well, Your Honor, I would submit the requirement there is not so much that the ALJ needs to do a sort of line item credibility analysis, has to go through everything the claimant says and to say, well, this testimony is credible for this reason, this testimony is not credible for this reason. It's essentially the ALJ needs to make specific credibility findings. So tell me why the ALJ, how we can tell why the ALJ found her not credible from the ALJ's decision. Point to me. It's only a ten-page decision or so. Tell me where the ALJ gives the reasons for finding her not credible. Yes, Your Honor. If I may have a moment to grab the decision from the tape. I'm having the same difficulty as Judge Ikuda. I'm looking now at page 21, page A38 in the record. And the judge says, I must make a finding on the credibility of the statements based on the consideration of the entire record. And then he goes through what she says and then says, objective medical evidence does not support a finding of disability. But that's not a finding of lack of credibility on her part. So where else does he discuss the reasons for finding a lack of credibility? Well, Your Honor, first of all, the reference to the objective medical evidence on page 21 there, I mean, that is a relevant, is one relevant consideration of the credibility finding. But he doesn't say the medical evidence is inconsistent with her testimony and therefore I find her not credible. He just says the medical evidence doesn't support a finding of disability. So maybe you could address the paragraph on page A40 of the record where after he has his boilerplate, it's not credible, then he goes into some of his reasons that the claimant hasn't received the type of medical treatment one would expect, the record doesn't contain any opinions. Can you go through that? Because none of those seem to be particularly go directly to credibility under our case law. So maybe you could explain that. Certainly, Your Honor. So I think that paragraph that's the last one on page A40 or page 23 of the transcript, all in all, the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. I mean, that's one of the reasons the ALJ is talking about. The ALJ is certainly discussing the claimant's treatment, what treatment she's received, and that is a factor in the regulations. How does that go to her credibility? Well, Your Honor, in the regulations, I believe it's 20 CFR 404, 1529C3, 4 and 5. Those regulations, there's a discussion. I'm impressed. Yeah. We're all impressed by your citing that off. Yes. But, I mean, that is, it's in the regulations where it says when the ALJ considers the credibility of a claimant's symptom testimony, one of the things the ALJ looks at is the nature of treatment the individual receives, the effectiveness of that treatment. I mean, that's something that the ALJ is required to look at. And it comes, it goes to credibility because the issue there becomes, well, this claimant says that she's disabled. She has mental limitations or physical limitations, whatever it might be, that causes her to be incapable of working. So the question there is, well, what treatment is she getting for this and how effective is that treatment? I'm sorry. But then the ALJ goes on to say that there's no record from treating physicians showing that she's disabled or has greater limitations and rejects Dr. Siever's statement based on claimant's subjective reports. Isn't that entirely circular? They say claimant isn't credible because her complaints aren't based on any medical records, and the medical records that do support them aren't credible because they're based on the claimant's non-credible testimony. I mean, that's entirely circular. I think, Your Honor, in this case it's really not circular because the primary issue that we're talking about is the claimant's mental impairments. They're impairments that are not really amenable to objective findings to the level of the subject. But doesn't the ALJ have to say something about why he found her not credible? And this is, this was the second paragraph that we focus on. But it says she didn't get the kind of treatment one would expect somebody with a serious mental impairment to have. There's no opinions in the record that she has a serious mental impairment except for Dr. Siever's, and they're based entirely on her statements to him. But doesn't, isn't this missing something which says those statements are not credible? I mean, after all, the fact that she didn't receive the treatment may mean that the doctors didn't give her the treatment. It doesn't mean she's not credible. And Dr. Siever and I think the other doctor, Dr. Zipperly, do report that she makes this complaint, these complaints to them. And the ALJ says, yeah, but your conclusions are based solely on her complaints and I don't think she's credible. Why is she not credible? What in this record tells me why she's not credible? So, Your Honor, I'd like to go to, I mean, the ALJ's decision, when we note on page 21 or A38 after the ALJ kind of goes through the boilerplate about credibility and then talks about the claimant's testimony is, the ALJ thereafter talks about the evidence and gives some indications about some things in that record. And in there, the ALJ is talking, the ALJ is talking about her credibility. That's sort of what that whole section is talking about. Well, the, it goes through the factual record, but the only thing I saw that specifically comments on the facts that the ALJ is reciting is that claimant's psychological impairments would impose negligible limitations if she were to stop the use of marijuana, which I take it was medical marijuana, so it was a prescribed drug, and consistently comply with treatment and medications. So that's the only comment I see there. Is that what you're relying on? We're relying in part on that, yes, Your Honor. And that's on page 23 or page A40. Right. And it mentions, yes, the claimant continues, the record indicates that continued marijuana use deprives her of motivation to comply. That's, that's consistent with what the claimant testified to at the hearing when the ALJ asked about the medical marijuana and with Dr. Siever's own treatment records. I agree. But why does that impair her credibility? So, Your Honor. I mean, it may mean, it may mean, as the ALJ concluded, that her impairments weren't as great as she claimed. That's a separate issue. If you, if you, if you regulate your marijuana use appropriately, you won't be as impaired as you claim. And Dr. Siever seems to say the same thing. But why does that mean she's not credible? It's because it's a noncompliance issue, Your Honor, because it goes back to what I was talking about in the regulations where the ALJ is supposed to consider the nature of the treatment. ALJ is supposed to consider what treatment the claimant receives and what it does. And when the claimant was compliant with her treatment for her mental health conditions, when she was doing what Dr. Siever said, which was taking her medications but not smoking marijuana, she registered improvement. She showed that she was doing better. Did she deny that? I'm sorry. She didn't deny that, did she? Deny that there was no improvement. Deny that she did better when she complied with Dr. Siever's orders? You know, Your Honor, I don't think that she directly denied that the medication helped, no. This says the claimant's testimony, as well as that of her mother's, tends to show improvement in the claimant's condition since June 2009. So the ALJ acknowledges that their testimony supports improvement. Our case law, though, says improvement is not enough to mean you're not disabled. And as Judge Hurwitz points out, it doesn't really go to credibility. It just goes to how disabled she was. Could you also address the opposing counsel's case, our decision in Ryan and in Ghanem, which relies on Ryan, which says you can't discount a psychologist or mental health provider's testimony for relying on subjective complaints when the psychologist themselves doesn't reject the complaints and there's additional evidence that they were relying on their observations? I mean, the language cited in Ryan seemed very close to what Dr. Zipperly said, where I'm seeing the agitation and the mental impairments. Why doesn't Ryan also make the ALJ's rejection of Zipperly and Siever's opinions very questionable? So, Your Honor, as to Ryan, I think the issue there is, it sort of is, as you mentioned, twofold for the Ryan decision. It says that an ALJ can't reject a medical source's opinion for relying on subjective complaints, especially if the doctor himself doesn't question those complaints and then also if the doctor points to other evidence in the record. The second part of that is, I think, the important part, because if the doctor is relying on the subjective complaints, of course the doctor wasn't rejecting them. So I think that sort of, that's, there's sort of an issue there that that's not really the meat of that case. I think the main thing is the doctor is actually bringing up other objective findings. And here we don't really have that with Dr. Zipperly. She examined the claimant, but the report that she gives is really just echoing back what the claimant told her. And we have, yes. In part, but then she goes on. Doesn't she go on to say, I don't have the language right in front of me, that as to Here it is. It talks about her grooving and hygiene. She spent a lot of time rocking back and forth. And then attitude and behavior. She was depressed, agitated, impatient and irritable. And then mood, affect. She is depressed and her affect is flat. I mean, these are clearly the observations of the doctor, very, very analogous to Ryan. I mean, she's not saying my affect is flat to the doctor. The doctor observes it. And I would note also there, Your Honor, that the case of Tomasetti versus Astru, I would say is actually a more on-point case here. In Tomasetti, there was a treating source named Dr. Nackenberg who had opined certain limitations that the claimant, that Mr. Tomasetti had. And the ALJ said, well, that doctor relied on subjective complaints. And in making that finding, the ALJ relied on a non-examining source. In that case, it was someone named Dr. Wiseman. In our case, we have Dr. Foster Valdez, who is the state agency psychiatrist, who looked at Dr. Zipperly's opinion, looked at that and said, well, this is based on subjective complaints. But let's go back. It's not. And that's my problem. Dr. Zipperly not only says, I've heard your subjective complaints and I have a diagnosis. Dr. Zipperly says, I'm looking at you. You're agitated. All the things psychologists and psychiatrists say that I don't understand. But some of it is based on personal observation. So isn't the rejection of Dr. Zipperly's report as wholly based on incredible statements made to him by the Petitioner here? Isn't that just wrong? No, Your Honor. I really don't think it's wrong. And that's why I go back to what Dr. Foster Valdez, the state agency psychiatrist who is an expert on the social security programs and is a medical doctor. As a non-examining physician, we give the least credit to them in the hierarchy. We start with the examining physician, which is Zipperly, and above that, the treating physician, which is Ziever. And their analysis say, I can't say it's disabled, but they say she has severe mental issues. And if the only basis is for rejecting that is that they relied on her subjective complaints, they don't, right? They, at least in part, they don't. And under Ryan, they don't. I would say that they do, Your Honor. I think that Ryan is distinguishable from this case. I maintain that the Tomasetti decision is a more, is a closer analog to this case with respect to Dr. Zipperly. And apparently it's not. Let me just, let me pose the larger problem here. The ALJ says, I reject the doctor's reports because they're largely based on her reporting and I find her not credible. Why do you find her not credible? The doctors didn't give her the kind of treatment they would have given her had she had these, had she had these symptoms. And I'm not sure, that seems to me to be, as you, as Judge Akuta suggested, sort of a circular set of reasoning, isn't it? And, Your Honor, I think, I mean, there's more to that than the, to the credibility than that. I think there is the issue of the objective evidence, which is a factor under the regulations to consider. There's the claimant's daily activities that the ALJ talks about in the credibility context. There's, there's the issue of treatment. And there's the issue throughout the record that's kind of peppered throughout here where the ALJ talks about evidence that the claimant was admitted to the hospital for vague reasons. She might have had ulterior motives. She said that she wasn't going to get treatment because, I'm sorry, she wasn't going to work because she knew it would hurt her disability case. I see that I'm over my time, Your Honors. Thank you. Thank you, Your Honors. The Commissioner asks the Court to affirm the ALJ's decision. Let's go back to that statement you just read, Judge Hurwitz. It's on page A40. All in all, the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. We've all seen that little bit of boilerplate in other decisions. What does it mean? What do you expect? What kind of treatment is lacking here? She's got mental disabilities. She's seeing a psychiatrist regularly. She's taking all manner of psychotropic medications. She's doing what she can do. And now let's talk about your judgment. Well, isn't that decision for the ALJ? I mean, the statement is unexplained. But I don't think it's our job to evaluate whether she was receiving the right type of medical treatment. Right. The ALJ does not get to opine about that. But you would generalize. Well, he may get to opine. He may get to opine. He just may not have enough reasons. I would like to see a reason. The ALJ does get to opine on that. We don't. Well, yes, but I would like to see a reason. And there's no reason. All in all, not generally receive the type of medical treatment. Does he want surgery? What does he expect? Let's go back to that. Is there any testimony in this record about the medical treatment one would expect somebody with her disabilities to get? Not really, because what we see here is. I thought that's what their non-examining experts sort of said, which is that if she really had these disabilities and saw doctors, they would have prescribed different things. Well, unfortunately, those DDS doctors opined about that right before all the medical records came in. So they were unclear, they said. But they had Zipperly's report. No, they didn't have it yet. It came in eight days after, and Dr. Severs as well. I've forgotten the man's name. Vince Valdez. Valdez Foster, is that the name? I think that's right. Foster Valdez. Foster Valdez. That he had Zipperly's but not Severs. So Zipperly was when? Zipperly was March 25, 2010, and Foster Valdez was April 26, 2010. So Foster Valdez had Zipperly but not Severs. Okay, that may be correct. But that really doesn't matter. I think what this gets back to is what do we expect psychologists to do? And on page 13 of the appellant's reply brief, Mr. Wilborn cites to a case out of the Southern District of Iowa entitled Cluster v. Apfel. And the reason he's looking out of circuit to persuade you is because we have nothing in this circuit that addresses this. This is how psychologists work. This was medically acceptable as far as the psychologist's qualifications, and that, she's been vetted by DDS. They send other people to her. So the problem, the conundrum here is, you know, when the ALJ likes the result, then they incorporate it. When they don't like the result, as here, then they find ways, they bend over backwards to find inconsistencies in the record to find this person not disabled. Thank you. And it's disingenuous in my view. Thank you. Thank you, Your Honor. Your time has expired. Okay. The case of Franklin v. Colvin is submitted.
judges: Ikuta, Hurwitz, Melloy